# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEAN HOPWOOD,          :   Civil Action No. 1:16-CV-01318
                              :
        Plaintiff,        :
    v.                   :   (Judge Kane)
                              :   (Magistrate Judge Saporito)
                              :
NANCY A. BERRYHILL,[1]     :
                              :
        Defendant.    :

## REPORT AND RECOMMENDATION

Plaintiff Jean Hopwood ("Ms. Hopwood"), an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. §405(g), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in place of the former Commissioner of Social Security.

Federal Rules of Civil Procedure. For the reasons expressed herein, we have found that the final decision of the Commissioner of Social Security is supported by substantial evidence. Accordingly, we recommend that the decision of the Commissioner be AFFIRMED, and that Ms. Hopwood's request for relief be denied.

I.  <u>STATEMENT OF FACTS AND OF THE CASE</u>

Ms. Hopwood last worked as a store laborer and store manager. As a store laborer, Ms. Hopwood was expected to lift up to fifty pounds. (Doc. 10-2 p. 40; Admin. Tr. 39). As a store manager, Ms. Hopwood was expected to be able to perform complex tasks. <u>See</u> 20 C.F.R. §404.1568(c)(defining skilled work); SSR 00-4p, 2000 WL 1898704 at *3 (explaining that skilled work corresponds to an SVP of 5-9 in the Dictionary of Occupational Titles).

On October 19, 2012, Ms. Hopwood filed an application for benefits under Title II of the Social Security Act alleging that she became disabled on January 1, 2009, due to the following medical and psychiatric conditions: depression; obsessive compulsive disorder ("OCD"); anxiety; neck and back pain; unusable left arm; rheumatoid arthritis; fibromyalgia;

cervical radiculopathy; cervical disc degeneration; cervical spondylosis; status-post lower back surgery; three bad discs in lower back; and status-post neck surgery. (Doc. 10-6 p. 6). She alleges that these conditions affect her ability to lift, walk, sit, stand, squat, bend, kneel climb stairs, reach, use her hands, complete tasks, and concentrate. (Doc. 10-6 p. 229).

In this case, Ms. Hopwood argues that the ALJ committed several errors when evaluating the severity and limiting effects of her spinal impairments. At the outset, because she seeks benefits under Title II of the Social Security Act, Ms. Hopwood bears the burden of proving that she was unable to work before the expiration of her insured status on June 30, 2011. Although the record in this case is voluminous, only a small portion of the evidence relates to the severity or limiting effects of Ms. Hopwood's spinal impairment on or before June 30, 2011. Since we write for the benefit of the Court and the parties, our discussion of the evidence is limited to those portions of the record that are relevant to Ms. Hopwood's arguments and the period before her insured status under the Social Security Act expired.

On June 4, 2008, Ms. Hopwood had surgery on her left foot to excise

a mass. (Doc. 10-14 pp. 45-47; Admin. Tr. 922-925). During a pre-operative examination Ms. Hopwood reported that, in addition to her foot pain, she had joint aches in multiple locations, and numbness and weakness in her legs that had been present for approximately six months. Id. Ms. Hopwood explained that she experienced identical symptoms years ago due to degenerative disc disease of the lumbar spine, but that her symptoms improved with surgery and had only recently began to recur. Id. Following surgery, Ms. Hopwood returned to work in or around late August of 2008, but continued to complain of leg pain. (Doc. 10-14 p. 41; Admin. Tr. 919).

Routine visits with rheumatologist Christine Phillips ("Dr. Phillips") between February 1, 2010, and March 8, 2011, revealed normal appearing upper and lower extremities, normal reflexes, and a normal straight leg raising test. (Doc. 10-7 pp. 6-9; Admin. Tr. 283-286).

The remainder of the evidence either addresses the severity and functional limitations of Ms. Hopwood's spinal impairment after June 30, 2011, or addresses impairments that are not relevant to Ms. Hopwood's

allegations of error in this case.[2]

On March 8, 2013, Ms. Hopwood's application for benefits was denied at the initial level of administrative review because the adjudicator found that the medical evidence was insufficient to establish the presence of a disabling impairment prior to Ms. Hopwood's date last insured. (Doc. 10-3 p. 8; Admin. Tr. 69). Upon receipt of this denial, Ms. Hopwood

---

[2] The record in this case includes numerous x-rays and MRIs, which demonstrate clinical abnormalities that could reasonably be expected to result in pain. (See Doc. 10-7 p. 49; Admin. Tr. 325)(MRI of lumbar spine dated Feb. 8, 2012); (Doc. 10-8 p. 77; Admin. Tr. 441)(MRI of lumbar spine dated Jun. 21, 2013); (Doc. 10-11 p. 84; Admin. Tr. 710)(X-rays of lumbar spine dated Oct. 24, 2013); (Doc. 10-11 p. 78; Admin. Tr. 704)(MRI of lumbar spine dated Nov. 11, 2013); (Doc. 10-7 p. 47; Admin. Tr. 324)(X-rays of cervical spine dated Jul. 25, 2012); (Doc. 10-7 p. 43; Admin. Tr. 320)(MRI of cervical spine dated Jul. 31, 2012); (Doc. 10-8 p. 25; Admin. Tr. 389)(MRI of cervical spine dated Dec. 13, 2012); (Doc. 10-11 p. 95; Admin. Tr. 721)(X-rays of cervical spine dated Dec. 13, 2012); (Doc. 10-11 p. 93; Admin. Tr. 719)(CT scan of cervical spine dated Dec. 13, 2012); Doc. 10-8 p. 80; Admin. Tr. 444)(X-rays of cervical spine dated Feb. 27, 2013); (Doc. 10-8 p. 78; Admin. Tr. 442)(X-rays of cervical spine dated Jun. 5, 2013); (Doc. 10-11 p. 85; Admin. Tr. 708)(X-rays of cervical spine dated Oct. 24, 2013); (Doc. 10-11 p. 80; Admin. Tr. 705)(MRI of cervical spine dated Nov. 11, 2013); (Doc. 10-13 p. 70; Admin. Tr. 860)(X-rays of cervical spine dated Feb. 25, 2014); (Doc. 10-13 p. 66; Admin. Tr. 856)(X-rays of cervical spine dated Apr. 30, 2014); (Doc. 10-13 p. 68; Admin. Tr. 857)(MRI of cervical spine dated Apr. 30, 2014). All of the diagnostic imaging, however, post-dates the relevant period by at least six months. No source has offered any opinion of what Ms. Hopwood's capacity during the relevant period might have been based on this evidence.

requested an administrative hearing. Ms. Hopwood continued to supplement the record during the period between the initial denial and her scheduled hearing. This evidence included a medical source statement by orthopedist James Thiel ("Dr. Thiel"), who treated Ms. Hopwood for a mass on her right foot between January 2013 and June 2013.

On November 27, 2013, Dr. Thiel assessed that Ms. Hopwood could: lift up to fifty pounds on a continuous basis, and lift up to one-hundred pounds occasionally; carry up to twenty pounds continuously, carry up to fifty pounds frequently, and carry up to one-hundred pounds occasionally; sit up to eight hours at one time without interruption, or for a total of eight-hours per workday; stand up to four hours at one time without interruption or for a total of four hours per eight-hour workday; walk for up to four hours at one time, or for a total of four hours per eight-hour workday; continuously reach (in all directions including overhead), handle, finger, feel, push, and pull; continuously use her feet for the operation of foot controls; frequently balance, stoop, climb ramps, and climb stairs; and, occasionally kneel, crouch, crawl, climb ladders, and climb scaffolds.

(Doc. 10-8 pp. 91-95; Admin. Tr. 455-459).[3]  Dr. Thiel also reported that Ms. Hopwood did not require the use of a cane to ambulate, and that he did not expect Ms. Hopwood's symptoms to persist for twelve months.  Id.

On July 30, 2014, Ms. Hopwood appeared and testified before Administrative Law Judge Patrick S. Cutter (the "ALJ").  Ms. Hopwood was represented by counsel throughout the proceedings.  However, almost four-hundred pages of new medical evidence were received by Ms. Hopwood, and introduced into evidence, on the evening before her hearing.  Ms. Hopwood was given an opportunity to testify about her impairments at the first hearing.  The ALJ scheduled a second hearing on November 5, 2014, to take vocational testimony in light of the new evidence that was submitted.  Ms. Hopwood was present and represented by counsel at both hearings.  Impartial vocational expert Brian Bierley appeared and testified at the second hearing.

On November 13, 2014, the ALJ denied Ms. Hopwood's application

---

[3]The questionnaire defined the terms continuously, frequently, and occasionally as follows: continuously "means more than two-thirds of the time"; frequently "means from one-third to two-thirds of the time"; and, occasionally "means very little to one-third of the time."  (Doc. 10-8 p. 91; Admin. Tr. 455).

in a written decision. The ALJ concluded that Ms. Hopwood was not under a disability as it is defined by the Social Security Act at any time between January 1, 2009, and June 30, 2011.

Ms. Hopwood sought review of the ALJ's decision from the Appeals Council of the Office of Disability Adjudication and Review. On April 27, 2016, the Appeals Council denied Ms. Hopwood's request, making the ALJ's November 2014 decision the final decision of the Commissioner subject to judicial review by this Court.

On June 27, 2016, Ms. Hopwood initiated this action. In her complaint (Doc. 1). Ms. Hopwood alleges that the final decision of the Commissioner denying her application for benefits contains an error of law and is not supported by substantial evidence. As relief, Ms. Hopwood requests that this Court enter an order awarding benefits.

On September 6, 2016, the Commissioner filed an answer to Ms. Hopwood's complaint. (Doc. 9). The Commissioner maintains that the final decision denying Ms. Hopwood's request for benefits was made in accordance with the law and regulations, and is supported by substantial evidence. Together with her answer, the Commissioner filed a certified

transcript of the administrative proceedings in this case. (Doc. 10).

This matter has been fully briefed by the parties and is ripe for decision. (Doc. 11; Doc. 12).

## II. STANDARD OF REVIEW

### A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the

evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."  Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).  The question before this Court, therefore, is not whether Ms. Hopwood is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts.");  see also Wright v. Sullivan, 900 F.2d

675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.  INITIAL BURDENS OF PROOF, PERSUASION, AND ARTICULATION FOR THE ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §423(d)(1)(A); <u>see also</u> 20 C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a).  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §423(d)(5); 20 C.F.R. §404.1512(effective Jun. 12, 2014 to Apr. 19, 2015)[4]; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the

---

[4] The version of 20 C.F.R. §404.1512 effective on the date the ALJ issued her decision in this case was amended during the pendency of this action. Section (a) of this regulation was not substantively changed, and section (f) was redesignated as section (b)(3) in the new version of 20 C.F.R. §404.1512. We cite to the version of this regulation that was effective on the date of the ALJ's decision, however, the outcome in this case would be the same under the new version of this regulation.

decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

III.   DISCUSSION

   A.   THE ALJ'S DECISION DENYING MS. HOPWOOD'S APPLICATION FOR BENEFITS

In his November 2014 decision denying Ms. Hopwood's application for benefits, the ALJ found that Ms. Hopwood met the insured status requirement of Title II of the Social Security Act through June 30, 2011. Thus, to prevail on her application, Ms. Hopwood must demonstrate that she became disabled on or before June 30, 2011. Evidence that could reasonably support a conclusion that she became disabled after that date is immaterial to her claim unless there is some evidence to link it to the

relevant period. After being faced with the difficult task of deciding whether Ms. Hopwood was disabled before June 30, 2011, where the record was composed almost entirely of evidence that post-dates Ms. Hopwood's date last insured, the ALJ evaluated Ms. Hopwood's claim at each step of the sequential evaluation process and ultimately concluded that Ms. Hopwood was not disabled under the Social Security Act on or before June 30, 2011.

At step one, the ALJ found that Ms. Hopwood did not engage in substantial gainful activity between January 1, 2009, and June 30, 2011 ( the "relevant period"). (Doc. 10-2 p. 14; Admin. Tr. 13).

At step two, the ALJ found that the medical evidence established the existence of the following medically determinable severe impairments during the relevant period: depression, anxiety, degenerative disc disease of the lumbar and cervical spine, fibromyalgia/diffuse pain, and lupus. Id. The ALJ found that the medical evidence established the existence of the following medically determinable non-severe impairments during the relevant period: asthma, and bilateral carpal tunnel syndrome. The ALJ found that the following impairments were not medically determinable

during the relevant period: hip pain/degenerative joint disease, left knee joint disease, and rheumatoid arthritis.  Id.

At step three, the ALJ found that the combination of Ms. Hopwood's medically determinable impairments as they existed during the relevant period did not meet or medically equal the severity of an impairment listed in the version of 20 C.F.R. Part 404, Subpart P, Appendix 1 in effect on the date the ALJ issued his decision.

Between steps three and four, the ALJ assessed Ms. Hopwood's RFC. The ALJ found that, through her date last insured, Ms. Hopwood had the RFC to perform light work as defined in 20 C.F.R. §404.1567(b), except that:

> the claimant could stand up to 4 hours, walk up to 4 hours, occasionally climb, balance, stoop, kneel, crouch, crawl, and perform work involving occasional exposure to temperature extremes, high humidity, and vibration.  The claimant could perform work that did not involve work at unprotected heights or contact with moving mechanical parts, could not perform overhead work with bilateral arms, and could frequently reach in all other directions bilaterally and handle bilaterally.  The claimant retained the mental capacity for routine, repetitive 1-2 step type tasks involving occasional changes and occasional decision-making.

(Doc. 10-2 p. 17; Admin. Tr. 16).

At step four, the ALJ found that Ms. Hopwood could not engage in any of her past relevant work. (Doc. 10-2 p. 20; Admin. Tr. 19).

At step five, the ALJ found that Ms. Hopwood could engage in other work that exists in significant numbers in the national economy. (Doc. 10-2 pp. 20-21; Admin. Tr. 19-20). In doing so, the ALJ formulated a hypothetical question that accounted for Ms. Hopwood's age during the relevant period (forty-three), level of education (limited), past relevant work experience, and the RFC assessment reproduced above, and posed it to VE Bierley. See 20 C.F.R. §404.1563(defining the age categories); 20 C.F.R. §404.1564(defining the education categories). In response to the ALJ's question, VE Bierley testified that such an individual would be capable of engaging in work as a small products assembler (DOT #706.684-022), electrical accessories assembler (DOT #729.687-010), and laminating machine tender (DOT #569.686-046). (Doc. 10-2 p. 41; Admin. Tr. 40). Based on this data, and statistical information provided by VE Bierley, the ALJ concluded that Ms. Hopwood was not disabled under the Social Security Act between January 1, 2009 and June 30, 2011.

B. <span>WHETHER THE ALJ ERRED WHEN HE FOUND THAT MS. HOPWOOD DID NOT MEET LISTING 1.04C OF 20 C.F.R. PART 404, SUBPART P, APPENDIX 1</span>

Appendix 1 of 20 C.F.R. Part 404, Subpart P ("listing of impairments"), describes, for each major body system, the severity of impairment that is considered to be severe enough to prevent a claimant from doing any gainful activity regardless of the claimant's age, education or work experience. 20 C.F.R. §404.1525(a). At step three of the sequential evaluation process, the ALJ considers whether the combination of the claimant's medically determinable impairments meets the severity of one of the impairments in the listing of impairments. 20 C.F.R. §404.1520(a)(4)(iii). If a claimant has an impairment that meets the twelve-month duration requirement, and meets or equals all the criteria of an impairment in the lifting of impairments, the claimant is found disabled. 20 C.F.R. §404.1520(a)(4)(iii).

However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment." <u>Sullivan</u>

v. Zebley, 493 U.S. 521, 531 (1990)(emphasis in original).  An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient.  Id.

Ms. Hopwood argues that she meets or medically equals listing 1.04C of the version of 20 C.F.R. Part 404, Subpart P, Appendix 1 that was in effect on the date of the ALJ's decision.  Listing 1.04C pertains to a disorder of the spine, such as degenerative disc disease, which results in compromise of the nerve root (including the cauda equina) or the spinal cord, with "[l]umbar stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."  20 C.F.R. Part 404, Subpart P, Appendix 1 §1.04C (effective Feb. 26, 2014 to Dec. 8, 2014).[5]     In his decision, the ALJ explains that Ms. Hopwood's impairments do not meet listing 1.04C because, "they are not associated with lumbar spinal stenosis resulting in pseudoclaudication manifested by chronic nonradicular pain

[5]All references to Appendix 1 of 20 C.F.R. Part 404, Subpart P refer to the version of the Appendix that was in effect on the date of the Commissioner's final decision.

and weakness, and resulting in inability to ambulate effectively." (Doc. 10-2 p. 16; Admin. Tr. 15).

In this context, "inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. 20 C.F.R. Part 404, Subpart P, Appendix 1 §1.00B2b. The listing of impairments also explains that:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home

without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, Subpart P, Appendix 1 §1.00B2b2.

Ms. Hopwood contends that the ALJ erred when he found that she did not meet the severity of listing 1.04C. In support of her argument, Ms. Hopwood relies entirely on evidence that post-dates the relevant period. Although she is correct that MRIs post-dating the relevant period show significant degeneration in her cervical and lumbar spine, this evidence is outside of the period of time relevant to her claim. Furthermore, no medical source has provided any statement that links the MRI and X-ray results with Ms. Hopwood's condition as it existed during the relevant period.

Moreover, Ms. Hopwood has failed to cite any evidence supporting her allegation that she was unable to ambulate effectively during the relevant period. As the ALJ noted in his RFC assessment, treating orthopedist Dr. Thiel reported that, even after the relevant period, Ms. Hopwood did not require an assistive device to ambulate, could frequently climb stairs, and could walk for up to four hours at a time without interruption. As such, we find that Ms. Hopwood's argument that the ALJ

should have found her disabled at step three of the sequential evaluation process lacks merit.

C. <u>Whether the ALJ's Decision at Step Five of the Sequential Evaluation Process is Supported by Substantial Evidence</u>

Ms. Hopwood argues in the alternative that the ALJ should have concluded that she was disabled at step five of the sequential evaluation process. Ms. Hopwood did not, however, articulate a clear theory of error. Instead, she copies paragraphs from her first argument almost verbatim, with one exception; she alleges that Dr. Thiel's assessment is inconsistent with the objective medical evidence of record, and that the ALJ gave it improper weight. As such, we construe this as an argument that the ALJ's decision is not supported by substantial evidence because he improperly weighed the medical opinion evidence of record.

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and

your physical or mental restrictions." 20 C.F.R. §404.1527(a)(1).[6] Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(b).

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). Under some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. §404.1527(a)(2)(defining treating source); 20 C.F.R. §404.1527(c)(2)(explaining what is required for a source's opinion to be controlling).[7]

---

[6]The Commissioner made sweeping changes to her policy on the evaluation of medical opinion evidence during the pendency of this action that became effective on March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed.Reg. 5844-01 (Jan 18, 2017). These revisions included "redefining several key terms related to evidence, revising our rules about acceptable medical sources (AMS), revising how we consider and articulate our consideration of medical opinions and prior administrative medical findings, revising our rules about medical consultants (MC) and psychological consultants (PC), revising our rules about treating sources, and reorganizing our evidence regulations for ease of use." Id. The definition of a medical source, as it applies to claims filed before March 27, 2017, is essentially unchanged.

[7]The treating source rule was eliminated for applications filed on or after March 27, 2017. 82 Fed.Reg. 5844-01, 5853. It continues to be in effect for claims filed before March 27, 2017. Id. In this case Ms. Hopwood filed her application for benefits on October 19, 2012. The treating source rule articulated in 20 C.F.R. §404.1527(c)(2) applies in this case.

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. See 20 C.F.R. §404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). "Where a conflict in the

evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999)(<u>quoting</u> <u>Mason</u>, 994 F.2d at 1066)); <u>see also</u> <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000).

Only one acceptable medical source offered an opinion about Ms. Hopwood's ability to function in the workplace. Like most of the evidence in this case, Dr. Thiel's opinion post-dates Ms. Hopwood's date last insured. The record reflects that Dr. Thiel treated Ms. Hopwood from January 21, 2013, through June 20, 2013, for a mass on her right foot. There is no indication that this opinion relates back to the relevant period.

The ALJ accorded "significant" weight to Dr. Thiel's assessment "since it was based on a treating relationship and is supported by the medical and examination findings during the period at issue." (Doc. 10-2 p. 20; Admin. Tr. 19). The ALJ also explained that he "provided the claimant with similar restrictions in the residual functional capacity since they are well supported by the limited medical and objective findings relating to the period at issue." <u>Id.</u>

Ms. Hopwood argues that this opinion is inconsistent with the

medical evidence of record and asserts that Ms. Hopwood "clearly is not physically capable of any assessment given by Dr. Theil[sic]." (Doc. 11 p. 13). In support of her argument, Ms. Hopwood relies entirely on evidence that is well outside the period at issue.

Our review of the ALJ's decision and Dr. Thiel's opinion reflects that the ALJ's decision to credit Dr. Thiel is consistent with the applicable regulations and is supported by the record. Dr. Thiel is a treating source, Dr. Thiel examined Ms. Hopwood approximately sixteen times over a period of six months, Dr. Thiel is a specialist in the field of orthopedics, and provided treatment notes in support of his opinion. Furthermore, although Dr. Thiel was not treating Ms. Hopwood's spinal impairments, he was aware that Ms. Hopwood suffered from cervical disc degeneration requiring possible surgical intervention and lower back pain. (Doc. 10-12 p. 39; Admin. Tr. 761). It was reasonable for the ALJ to conclude that Dr. Thiel's opinion was, at a minimum, not inconsistent with the records that pertain to the relevant period, which do not contain little evidence of any spinal impairment. Accordingly, we find that Ms. Hopwood's allegation that Dr. Thiel's opinion was given undue weight lacks merit, and that the

ALJ did not err in finding Ms. Hopwood "not disabled" at step five of the sequential evaluation process.

IV.    RECOMMENDATION

Accordingly, because we find that the ALJ's decision is supported by substantial evidence, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED as follows:

1.    Jean Hopwood's request for the award of benefits should be DENIED, and the Commissioner's final decision denying Jean Hopwood's application for benefits under Title II of the Social Security Act should be AFFIRMED;

2.    A separate order of final judgment should be issued in favor of the Acting Commissioner of Social Security and against Jean Hopwood; and,

3.    The Clerk of Court should be directed to close this case.

s/ Joseph F. Saporito, Jr.
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: May 26, 2017

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN HOPWOOD, | : | Civil Action No. 1:16-CV-01318 |
| | : | |
| Plaintiff, | : | |
| v. | : | (Judge Kane) |
| | : | (Magistrate Judge Saporito) |
| | : | |
| NANCY A. BERRYHILL, | : | |
| | : | |
| Defendant. | : | |

## NOTICE

Notice is hereby given that the undersigned has entered the foregoing Report and Recommendation dated May 26, 2017. Any party may obtain a review of this Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

<u>s/ Joseph F. Saporito, Jr.</u>
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: May 26, 2017